UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA ALLEN,

    Plaintiff,                                  Civil Action No. 08-13619

v.                                           HON. JOHN CORBETT O'MEARA
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

       Plaintiff Debra Allen brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

**PROCEDURAL HISTORY**

       On October 30, 2001, Plaintiff filed a claim for DIB, alleging disability as of March 6, 2001 (Tr. 51). Plaintiff's claim was denied at the initial level on January 30, 2002 (Tr. 51). On April 30, 2003, Plaintiff filed a second application for DIB, again alleging disability as

of March 6, 2001 (Tr. 83). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on October 19, 2005 in Birch Run, Michigan before Administrative Law Judge ("ALJ") Sherwin F. Biesman (Tr. 269). Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 269-275). On February 1, 2006, ALJ Biesman determined that Plaintiff was not disabled (Tr. 58). On August 17, 2006, the Appeals Council remanded the case, directing the ALJ to (1) evaluate "treating and examining source opinions" (2) provide a rationale for Plaintiff's Residual Functional Capacity ("RFC") (3) obtain evidence from a Vocational Expert (Tr. 39-40). On January 4, 2007, ALJ Regina Sobrino conducted a second administrative hearing in Flint, Michigan (Tr. 277). Plaintiff, again represented by Mikel Lupisella testified, as did Vocational Expert ("VE") Roxane Minkus (Tr. 281-289, 290-301). On March 28, 2007, ALJ Sobrino found that Plaintiff was capable of a significant range of light work (Tr. 28-29). Plaintiff filed for judicial review of the final decision on August 20, 2008.

## BACKGROUND FACTS

Plaintiff, born April 18, 1954, was just short of her 53 birthday when ALJ Sobrino issued her decision (Tr. 29, 83). She completed high school and two years of college, working previously as an automotive assembler (Tr. 94, 99). She alleges disability as a result of tendinitis and carpal tunnel syndrome (Tr. 93).

    **A.    Plaintiff's Testimony**

  **1. October 19, 2005 Hearing**

Plaintiff testified that she lived with her husband and daughter in Burton, Michigan (Tr. 269). Plaintiff, reporting that she was on extended disability from Delphi Corp., alleged that she experienced impairments in lifting, gripping, and reaching with the right arm as a result of CTS and a torn rotator cuff (Tr. 270). Plaintiff also alleged difficulty walking. She indicated that she had refused surgery for both CTS and shoulder problems because surgery afforded her only a "50/50" chance of recovery (Tr. 271). She testified that her former job duties requiring repetitive arm and hand movements had created the medical conditions at issue, opining that she could perform "a strictly . . . sit down job," if she were given a sit/stand/walk option (Tr. 271-272, 274).

### 2. January 4, 2007 Hearing

Plaintiff testified that she held an Associate's Degree in child development (Tr. 281-282). She alleged that despite one 30-day work attempt since March, 2001, she was unable to work as a result of right hand, arm, and shoulder problems, adding that she now experienced back pain radiating into her lower extremities (Tr. 282). Plaintiff reported that she could stand or walk for a maximum of one hour and sit for a maximum of one hour before needing to change positions (Tr. 283). She alleged that she was unable to lift "anything" with her right arm, but could lift with her left hand (Tr. 283). Plaintiff denied problems writing or other fine manipulations, but reported difficulty reaching overhead, bending, squatting, and climbing stairs (Tr. 284). Plaintiff testified that she performed only light housework and no yard work, but was able to manage most personal care functions without help (Tr. 285-286). She alleged that her driving was limited to short distances (Tr.

286).

Plaintiff denied medication side effects, noting that she saw both Dr. Levin, a neurologist, and her family doctor on a regular basis (Tr. 287). She denied hospital stays or emergency treatment since stopping work (Tr. 288). In response to her attorney's questioning, Plaintiff testified that arm pain created nighttime sleep disturbances requiring her to nap for approximately one hour each day (Tr. 288-289). Plaintiff alleged that as a result of her physical problems, she felt "drug[ged] out most of the time" (Tr. 289).

### B. Medical Evidence

#### 1. Treating Sources

In October, 1995, Plaintiff reported right hand and cervical strain (Tr. 196-197). In September, 1996, Plaintiff demonstrated a full range of arm and hand motion and full grip strength despite complaints of shoulder and hand pain (Tr. 195). In March, 2000, Plaintiff was placed on work restrictions limiting gripping and precluding the use of vibrating tools (Tr. 194). The same month, EEG and nerve conduction studies showed the presence of "mild right median nerve dysfunction" consistent with CTS (Tr. 193). In May, 2000 through March, 2001, Plaintiff received work restrictions including right hand preclusions on pounding, repetitive gripping, and twisting (Tr. 180, 182, 184, 186,188-189). In August, and October, 2000 and March, 2001, Plaintiff's family physician, Kenneth Steibel, M.D. also requested work restrictions limiting right arm use (Tr. 215). Medical records from April, 2001 to April, 2003 indicate that "no job [was] available" at Plaintiff's workplace due to her restricted right hand use (Tr. 145, 149, 152, 165-168, 173-174, 176).

In January, 2002, Anthony de Bari, M.D. examined Plaintiff, noting complaints of neck, shoulder, arm, and hand pain (Tr. 236). Plaintiff exhibited a full range of shoulder motion with "mild tenderness over the acromioclavicular joint" (Tr. 236). Dr. de Bari observed the absence of wrist atrophy and a full range of finger motion (Tr. 236). He diagnosed Plaintiff with "an impingement of the right shoulder with chronic tendinitis" and CTS (Tr. 236). Dr. de Bari noted that Plaintiff "did not want any surgery on the hand or shoulder," agreeing that she did not need shoulder surgery (Tr. 236). In July, 2002, Dr. de Bari prescribed Darvocet in response to Plaintiff's complaints of pain (Tr. 235). The following month, an MRI of the cervical spine showed the absence of spinal stenosis (Tr. 234). An MRI of the right shoulder showed a partial tear of the subscapularis tendon (Tr. 233). Dr. de Bari placed Plaintiff on work restrictions precluding repetitive reaching, pushing, pulling, or lifting over ten pounds from August 27, 2002 through January 1, 2003 (Tr. 232).

In February, 2003, Zachary J. Endress, M.D. observed that despite Plaintiff's complaints of right hand and shoulder pain, she exhibited a full range of shoulder and cervical spine motion (Tr. 151). Dr. Endress noted the absence of swelling or atrophy, noting further that Phalen's and Tinel's signs were negative (Tr. 151). After reviewing results of an MRI scan showing "partial tears in the supraspinatus and subscapularis tendons," Dr. Endress found as follows:

> "I think this woman does not require surgery on her neck, shoulder or hand. I think a carpal tunnel splint would be appropriate treatment for the right hand [CTS]. I do not think that any treatment is necessary for the partial tears in the

-5-

>rotator cuff since these will tend to heal by themselves with time. Since no abnormalities are detected in the cervical spine, I do not think that any treatment is indicated for her cervical spine"

(Tr. 148).

Dr. de Bari's October, 2003 treating notes indicate that while Plaintiff complained of hip pain, "[h]er right shoulder ha[d] full range of motion without pain or tenderness. . ." (Tr. 228). In May, 2004, Plaintiff's right shoulder showed "tenderness to palpation," with "only sightly diminished [strength] for flexion and abduction" (Tr. 224). Plaintiff reiterated that she did not want surgical intervention or steroid injections (Tr. 224).

In September, 2004, Dr. de Bari referred Plaintiff for an arthroscopic evaluation in response to Plaintiff's report of continued shoulder pain (Tr. 218). The following month, Jeffrey R. Levin, M.D. conducted an EMG showing bilateral carpal and cubital tunnel syndrome (Tr. 258). In September, 2005, Dr. Levin, noting that Plaintiff continued to experience carpal and cubital tunnel syndrome, recommended that because "no jobs [were] available with her restrictions," she should remain off work (Tr. 259). In January, 2006, Neil Bleiberg, M.D. diagnosed Plaintiff with CTS, right rotator cuff syndrome, right upper limb tendinitis, and right lateral epicondylitis (Tr. 256). Dr. Bleiberg found that Plaintiff could return to full-time work with restrictions of the right arm and hand consisting of "no lifting greater than 5 pounds," "no repetitive activity," "no prolonged or forceful griping," and "no over-the-shoulder level work" (Tr. 257). In October, 2006, Dr. Levin, noting that Plaintiff's Workers' Compensation case had settled, remarked that Plaintiff continued to experience carpal and cubital tunnel syndrome, cervical radiculopathy, and right rotator cuff pathology"

(Tr. 261). In December, 2006, Dr. Levin completed a Medical Source Statement on behalf of Plaintiff's application for disability benefits, finding that Plaintiff was unable to lift more than 10 pounds or stand or walk more than two hours in an eight-hour workday (Tr. 262). He concluded that Plaintiff was unable to work for more than two hours per day (Tr. 262).

### 2. Non-examining Sources

A December, 2001 Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and ten pounds frequently; stand, walk, or sit for about six hours in an eight-hour workday; push and pull without limitations in the lower extremities, but experienced upper extremity pushing and pulling limitations (Tr. 135). The Assessment, drawn from Plaintiff's treating records, found that despite reports of "tenderness," x-rays showed "no evidence of fracture, dislocation or arthritis" (Tr. 135). Plaintiff's postural limitations consisted of a preclusion on ladder, rope, or scaffold climbing; occasional stooping, kneeling, crouching, and crawling, and frequent (as opposed to *constant*) ramp and stair climbing (Tr. 136). The Assessment limited Plaintiff to occasional reaching, frequent handling and feeling, and constant fingering (Tr. 137). The Assessment found the absence of visual and communicative limitations, finding that Plaintiff should avoid concentrated exposure to vibrations (Tr. 137-138).

In May, 2003, a second Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and ten pounds frequently; stand, walk, or sit for about six hours in an eight-hour workday; and an unlimited ability to push and pull in the lower

extremities with limited pushing and pulling in the upper extremities (Tr. 199). Plaintiff's postural limitations consisted of a preclusion on all climbing of ladders, ropes, and scaffolds (Tr. 200). She was limited to occasional overhead reaching, and frequent handling, fingering, and feeling (Tr. 201). The Assessment found the absence of visual or communicative limitations but precluded all work involving vibration and heights (Tr. 201-202). Plaintiff's allegations of limitation were deemed "partially credible" (Tr. 203).

### C. Vocational Expert Testimony

VE Roxane Minkus classified Plaintiff's former assembly work as unskilled at the light to medium exertional level[1] (Tr. 293). ALJ Sobrino then posed the following question to the VE:

> "I want you to assume someone who has [Plaintiff's] work background, and I want you to assume an individual who has an Associate's Degree. Assume a person who was born in 1954. Assume an individual who's limited to lifting, carrying, pushing and pulling no more than 10 pounds frequently and 20 pounds occasionally, and the person should be able to use both hands to do that. There should be no pushing or pulling using the right arm only, and that is the dominant upper extremity. Assume an individual who can occasionally stoop, occasionally kneel and crouch. The person is limited to frequent handling, fingering and feeling, should not have to reach overhead to do the job. Reaching with the right arm in other directions is limited to occasional."
> The person should not be exposed to vibration, should not be exposed to

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

>coolants. A person with these limitations, I take it, could not do the work that Ms. Allen did, is that right?

(Tr. 294).

The VE replied that the above limitations would rule out Plaintiff's former work, finding however that she could perform the unskilled, *sedentary* work of a surveillance system monitor (1,500 jobs in the regional economy), telephone solicitor (1,700), and the exertionally *light* work of restaurant hostess (2,100), office clerk (3,500), and information clerk (1,800) (Tr. 295-296). The VE stated that aside from her findings that the job descriptions in the Dictionary of Occupational Titles ("DOT") differed "how the jobs are actually performed in [the lower peninsula of Michigan]" her testimony was consistent with the information found in the DOT (Tr. 297). In response to questioning by Plaintiff's attorney, the VE testified that if Plaintiff was unable to reach in *any* direction with the right arm, the hostess and office clerk jobs would be eliminated and the job numbers for information clerk would be halved (Tr. 298).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of CTS, right rotator cuff syndrome, and right upper limb tendinitis, determining however that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 23-24). The ALJ found that while Plaintiff was unable to perform her past relevant work as an assembler, she retained the residual functional capacity ("RFC"):

> "to lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally, using both hands. She should not climb ladders, ramps, or scaffolds. She can occasionally stoop, kneel and crouch. She is limited to frequent (not constant) handling, fingering, and feeling. She should not reach overhead, or use the right arm to reach in other directions more than occasionally. She should not be exposed to vibration or to coolants"

(Tr. 25). Adopting the VE's job findings, *supra*, the ALJ found that Plaintiff could perform a significant number of light and sedentary jobs (Tr. 27).

In support of the non-disability finding, the ALJ found that Plaintiff's "allegations of disabling symptoms [were] not fully substantiated" (Tr. 26). She noted that Plaintiff had not pursued aggressive treatment for her hand or shoulder conditions, noting further that Plaintiff claimed in May, 2003 that her ability to walk was unimpaired (Tr. 26). Citing Plaintiff's activities of daily living, the ALJ observed that Plaintiff continued to prepare light meals, drive, shop, run errands, attend parent-teacher meetings, and socialize with family and friends (Tr. 26).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Hypothetical Limitations

Plaintiff argues that the ALJ erroneously disregarded Dr. de Bari's August, 2002 opinion that she was precluded from all repetitive reaching, working below shoulder level, and lifting over 10 pounds. *Plaintiff's Brief,* 9-11, *Docket #*8 (*citing* Tr. 232). Citing *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), Plaintiff contends that the hypothetical question's omission of Dr. de Bari's August, 2002 findings taints the ultimate non-disability determination. *Id.* She also argues that ALJ's "hypothetical question" error was compounded by her failure to explain her reasons for rejecting the orthopedic surgeon's findings. *Id.* (*citing Walker v. Secretary of Health and Human Services*, 980 F2d 1066, 1070 (6th Cir. 1992)). Plaintiff contends that her treating records support a finding that she is capable of only sedentary work. *Id.* at 10.[2]

*Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987),

---

[2]

In the present case, whether Plaintiff, almost 53 at the time of the hearing, could perform light work is critical since a finding that she was unable to perform any past relevant work, coupled with a finding that he could perform only sedentary work would direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [] for only sedentary work, § 201.09, but not if his RFC is light. § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986); *see also Scales v. Commissioner of Social Sec*., 1996 WL 343533, *2 (6th Cir. 1996).

-12-

sets forth the Sixth Circuit's requirements for a hypothetical question. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments" (internal citations omitted). *Id*. at 779; *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). The hypothetical question must be supported by record evidence. However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

Substantial evidence easily supports the ALJ's choice of hypothetical limitations. First, the finding that Plaintiff could lift 20 pounds and perform occasional reaching was consistent with Dr. Endress' February, 2003 opinion that Plaintiff could return to work provided that she avoid heavy lifting and "repetitive flexing" of the wrist and shoulder (Tr. 24, 294). Although Plaintiff faults the ALJ for disregarding Dr. de Bari's August, 2002 findings that she was unable to reach with the right hand or lift more than 10 pounds, ALJ Sobrino in fact discussed these findings, aptly noting that by November, 2002, another physician found that her only remaining restrictions were "no repetitive gripping and twisting" (Tr. 24 *citing* 156). More obviously, a review of the August 27, 2002 restrictions by Dr. de Bari does not suggest that Plaintiff was *permanently* restricted to lifting 10 pounds and no right hand reaching, stating instead that the restrictions would be in effect for four months (January 1, 2003) (Tr. 232).

Next, I also disagree with Plaintiff's overlapping argument that the ALJ failed to explain her reasons for giving only limited weight to treating source opinions.³ In addition to discussing Dr. de Bari's August, 2002 findings, the ALJ thoroughly explained her reasons for rejecting Dr. Levin's December, 2006 "disability" finding, noting that it stood at odds with his own September, 2005 finding that Plaintiff impairments were limited to "no repetitive gripping or twisting with the right hand" (Tr. 26 *citing* 262). The ALJ noted further that although Dr. Levin found in December, 2006 that Plaintiff required a sit/stand option, his *October*, 2006 summary of Plaintiff's conditions contains no mention of walking, standing, or sitting impairments (Tr. 26 *citing* 261). Finally, the ALJ rejected the December, 2006 opinion that Plaintiff was incapable of standing or walking for more than two hours a day on the basis that it contradicted Dr. Bleiberg's January, 2006 observation that Plaintiff demonstrated "5/5 strength in the lower extremities" (Tr. 26 *citing* 254). The ALJ permissibly found that Plaintiff's continued participation in exertionally light activities such as caring for her own personal needs, climbing stairs without difficulty, preparing meals, doing laundry, shopping, driving, attending meetings, and socializing on a regular basis, stood at odds with her underlying argument that she was limited to sedentary work (26 *citing*

---

³The Sixth Circuit holds that in determining the weight accorded to a treating physician, the ALJ must consider "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)).  An ALJ's failure to explain his reasons for rejecting a treating physician's opinion constitutes reversible error. *Id.* at 547.

114-117).

In closing, I note that this Court's conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments. However, the overriding question in this appeal is whether the Commissioner's decision was supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                S/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: July 10, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 10, 2009.

                                                S/Andrea Teets
                                                Deputy Clerk